# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 15-CV-2927 (JFB)(AKT)

DARIN POOLE,

Plaintiff,

VERSUS

ARMOR CORRECTIONAL HEALTH SERVICES ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
March 21, 2016

JOSEPH F. BIANCO, District Judge:

On May 14, 2015, plaintiff Darin Poole ("Poole" or "plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action against defendants Armor Correctional Health Services ("Armor"), Nassau County, Nassau County Correctional Center ("NCCC," s/h/a Nassau County Jail, and with Nassau County, "County Defendants"), and New York State. Plaintiff alleges claims under Section 1983 concerning his medical care and a deprivation of food while incarcerated at the NCCC.

County Defendants and Armor now move to dismiss for failure to state a claim pursuant to Rule 12(b)(6), and defendant New York State moves to dismiss the complaint under Rule 12(b)(1) on the grounds that plaintiff's action is barred by the Eleventh Amendment, as well as under Rule 12(b)(6) for failure to state a claim.

For the reasons discussed below, the County Defendants' and Armor's motions are denied. New York State's motion is granted.

I. BACKGROUND

A. Facts

The following facts are taken from the plaintiff's complaint (Compl.) and are not findings of fact by the Court. Instead, the Court will assume the facts to be true and, for purposes of the pending motions to dismiss, will construe them in a light most favorable to the plaintiff, the non-moving party.

Plaintiff alleges that, on May 7, 2015, he was transferred to a "workers dorm," which required him to walk up "four flights of stairs 7 days a week." (*Id.* at Attach. 1.) Plaintiff alleges that, when he found out about this transfer, he "informed medical by written letter twice, about the damage to [his] left knee." (*Id.*) Plaintiff contends that medical

1

never answered him, and before he was transferred, he wrote "3 written request (sic) to go to the hospital" because he "already had built up fluid on his left knee and [he] barely can walk." (*Id.*) Plaintiff alleges that medical never responded to him about a knee brace or ace bandage to be used to wrap his knee for support. (*Id.*) Plaintiff further alleges that, when he first arrived at the NCCC, he requested to go to the hospital to be seen by orthopedics, but medical never "honored or responded to" his request. (*Id.*) Plaintiff also alleges that he told the housing officers that he could not take the job because "going up and down the stairs within a 3 day period cause (sic) [his] left knee to swell up [to] the size of a football helmet." (*Id.*)

Plaintiff alleges that, on May 8, 2015, the swelling of his left knee increased, and he again informed the housing officers that he was in "serious pain, and even pulled up [his] pant leg, and showed the officers just how bad the swelling was." (*Id.* at Attach. 2.) Plaintiff alleges that he informed medical by at least eight sick call forms and more than six letters, but that medical never responded and he was never seen, but he was required to go to work or risk losing his privileges. (*Id.*) Plaintiff alleges that the housing officers refused to let him go to emergency medical and told him that if he did not go to work, they would "lock [him] in except for 2 hrs (sic) a day [he] would come out for rec, which is outside down 4 flights of stairs down and then back up." (*Id.*)

Plaintiff alleges that, on May 9, 2015, he had trouble getting to the fourth floor, and when he asked a housing officer to call emergency medical, the officer declined and told him to "find [his] cell." (*Id.* at Attachs. 2-3.) Plaintiff alleges that the officer refused to provide plaintiff with his name and a grievance form, even though plaintiff pointed out the grievance forms on his desk, and then "caught a serious attitude" and began using derogatory comments toward the plaintiff. (*Id.* at Attach. 3.) Plaintiff alleges that a group of housing officers refused to tell him who made the comments, refused to provide plaintiff with their names and shield numbers, and threatened that he would lose his privileges. (*Id.* at Attach. 4.) Plaintiff alleges that the officers thereafter wore their shields and name tags backwards around him so that he could not obtain their names and shield numbers. (*Id.*)

Plaintiff also contends that, on May 9, 2015, he slipped and fell down to the third floor because the fourth floor was wet from being mopped. (*Id.*) Plaintiff alleges that his left knee "went completely out" so that he could not walk at all. (*Id.*) Plaintiff alleges that two other inmates who were ahead of him told the officers that he had slipped and hurt himself, and that when the officers came, plaintiff asked them to contact medical because he could not walk. (*Id.* at Attach. 5.) Plaintiff alleges that one of the officers told him that the line was busy and asked the two inmates to help him up. (*Id.*) Plaintiff alleges that one officer said he would try to contact medical, but the other officers were laughing and the same officer that previously made racist remarks toward him again made derogatory comments. (*Id.*)

Plaintiff alleges that, on May 10, 2015, a supervisor informed him that he received a "lock in," began yelling at plaintiff when he asked why he received a ticket, and then began spitting in plaintiff's face. (*Id.* at Attach. 6.) Plaintiff alleges that the supervisor told him to sign a ticket that falsely indicated that plaintiff called the supervisor "a bunch of names." (*Id.* at Attachs. 6-7.)

Plaintiff further alleges that there was a "food cart shortage" in the medical ward's kitchen, and that officers took the inmates' allotted food so that he and other inmates had

2

no lunch or dinner for three days and nights. (*Id.* at Attachs. 7-8.) Plaintiff alleges that the medical unit wrote him a ticket for complaining about the food and the supervisor, even though his fellow inmate who is white, also complained and was not disciplined. (*Id.* at Attach. 8.)

B. Procedural History

Plaintiff commenced this action on May 14, 2015. On August 4, 2015, New York State filed a motion to dismiss plaintiff's complaint. On September 4, 2015, Armor filed its motion to dismiss, and on September 21, 2015, the County Defendants filed their motion to dismiss. On September 21, 2015, plaintiff filed a letter in opposition. On October 19, 2015, Armor filed its reply, and on October 21, 2015, County Defendants filed a letter requesting their motion be submitted as unopposed.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id*. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Where, as here, the plaintiff is proceeding *pro se*, "a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678);

3

*see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

### III. DISCUSSION

#### A. Section 1983 Claims

Plaintiff brings several claims under Section 1983 against the defendants.[1] To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Plaintiff brings two separate claims under Section 1983 alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment.[2] First, plaintiff alleges deliberate indifference to his medical needs. Second, plaintiff alleges that he was deprived of meals. For the reasons explained below, the Court finds that plaintiff has adequately stated an Eighth Amendment claim based on deliberate indifference to his medical needs and as to his claim regarding being deprived of meals.

#### 1. Deliberate Indifference

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "There are two elements to a claim of deliberate indifference to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and internal quotation marks omitted). Analyzing this objective requirement requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to

---

[1] Plaintiff asserts Section 1983 claims against the NCCC. The Court notes, however, that the NCCC is an "administrative arm[ ] of Nassau County, and therefore, [is] not [a] suable entit[y]." *Melendez v. Nassau Cty.,* No. 10-CV-2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010); *see also Joseph v. Nassau Cty. Corr. Ctr.*, No. 12-CV-4414 (JFB)(AKT), 2013 WL 1702162, at *3 (E.D.N.Y. Apr. 19, 2013) (same). "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *David v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). Thus, plaintiff cannot raise a plausible Section 1983 claim against the NCCC, and such claim is dismissed.

[2] As an initial matter, the Court notes that Armor is a private entity contracted to provide medical services to inmates at the NCCC. (Doody Decl. ¶ 3.) Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, Armor was "acting under the color of state law" for purposes of Section 1983. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [plaintiff]; the State delegated that function to respondent [doctor]; and respondent voluntarily assumed that obligation by contract."); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 202 (N.D.N.Y. 2006) ("It is clear that medical care providers working in a prison are state actors."). The Court thus proceeds to consider whether Armor violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, such that it would be liable to plaintiff under Section 1983.

examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. To meet this requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has "presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: '(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain.'" *Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (quoting *Brock*, 315 F.3d at 162) (additional internal quotation marks omitted); *see also Griffin v. Amatucci*, No. 11-CV-1125 (MAD)(TWD), 2014 WL 2779305, at *4 (N.D.N.Y. June 19, 2014), *rev'd in part on other grounds*, 611 F. App'x 732 (2d Cir. 2015) (same).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the question is whether defendants "knew of and disregarded an excessive risk to [a plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (citation, alterations and internal quotation marks omitted). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citation and internal quotation marks omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness" and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citation and internal quotation marks omitted). In contrast, mere negligence is not enough to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eight Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 408 (N.D.N.Y. 2014).

Here, the Court has liberally construed plaintiff's complaint – taking all of his allegations as true and construing them in the light most favorable to plaintiff – and, for the reasons set forth below, cannot conclude at this juncture, as a matter of law, that he has failed to state a claim under Section 1983 for deliberate indifference to serious medical needs.[3]

---

[3]Although Armor has submitted certain of plaintiff's medical records, which it contends demonstrate that "Armor and its staff rendered reasonable medical care to the plaintiff's injured knee," (Armor Mem. of Law at 9), the Court cannot consider such records on a motion to dismiss, and declines to convert Armor's motion into one for summary judgment because

With respect to the objective prong of plaintiff's deliberate indifference claim, plaintiff alleges that he suffered "serious pain" in his left knee, including swelling and built up fluid that was so bad that he "barely [could] walk." (Compl. at Attach. 1.) Plaintiff further alleges that after he slipped and fell on May 9, 2015, his left knee "went completely out" so that he "couldnt (sic) walk at all." (*Id.* at Attach. 4.) Taken as true, plaintiff's knee pain, which he alleges was so severe that he could barely walk (and subsequently, could not walk at all), provides a plausible claim that is sufficiently serious to meet the objective requirement of a deliberate indifference claim. *See, e.g.*, *Rodriguez v. Fed. Bureau of Prisons*, No. 9:10-CV-1013 (LEK)(TWD), 2012 WL 6965109, at *9 (N.D.N.Y. Nov. 30, 2012), *report and recommendation adopted*, No. 9:10-CV-1013 (LEK)(TWD), 2013 WL 375537 (N.D.N.Y. Jan. 30, 2013) (finding allegations that plaintiff's knee problems "significantly affected his daily activities, particularly when the knee jammed, and that he had chronic and substantial pain as a result of the problems in his knee" satisfied the objective element of plaintiff's deliberate indifference claim); *Guarneri v. Hazzard*, No. 9:06-CV-0985, 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27, 2008) (allegation of "excruciating pain" due to deprivation of plaintiff's knee brace constituted a serious medical condition); *see also Burton v. Lynch*, 664 F. Supp. 2d 349, 364–65 (S.D.N.Y. 2009) (allegation of elbow condition was sufficiently serious where plaintiff could not straighten elbow or fully utilize arm).

With respect to the subjective prong as to Armor, plaintiff alleges that before he was transferred to the "workers dorm," he "informed medical by written letter twice, about the damage to [his] left knee" and also made a written request to go to the hospital due to the built up fluid in his knee, but alleges that medical never responded to his requests. (Compl. at Attach. 1.) Plaintiff further alleges that, when he first arrived at the NCCC, he requested to go to the hospital to be seen by orthopedics, but that medical never "honored or responded to" his request. (*Id.*) Plaintiff also alleges that, after he transferred units, he suffered increased swelling and although he informed medical by at least eight sick call forms and more than six letters, medical never responded and he was never seen. (*Id.* at Attach. 2.) Construing plaintiff's allegations as true, plaintiff has sufficiently alleged that Armor acted with deliberate indifference to plaintiff's medical condition by knowing of his repeated complaints regarding his knee injury and failing to provide any treatment. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim.").

With respect to the subjective prong as to the County Defendants, plaintiff alleges that when he was transferred, he told the housing officers that he could not take the job because "going up and down the stairs within a 3 day period cause (sic) [his] left knee to swell up [to] the size of a football helmet." (Compl. at Attach 1.) Plaintiff further alleges that, on May 8, 2015, he again informed the housing officers that he was in "serious pain, and even pulled up [his] pant leg, and showed the officers just how bad the swelling was." (*Id.*

---

plaintiff should have the opportunity to obtain all of his medical records and to submit any other documents relating to his medical condition, including an affidavit. If defendants wish to depose plaintiff on the issue of his treatment and exhaustion of remedies, they will have the opportunity to do so.

at Attach 2.) Plaintiff also alleges that, on May 9, 2015, when he had trouble getting to the fourth floor, and asked a housing officer to call emergency medical, the officer declined and told him to "find [his] cell." (*Id.* at Attach 3.) Plaintiff further alleges that when he slipped and further injured his knee on May 9, 2015, and asked the housing officers to contact medical because he could not walk, one of the officers told him that the line was busy and instead, had other inmates help plaintiff back to his cell. (*Id.* at Attachs. 4-5.) Drawing all reasonable inferences in plaintiff's favor, plaintiff has plausibly alleged that County Defendants knew of his severe knee pain, but decided not to get him medical treatment, thus, consciously disregarding a substantial risk of serious harm to plaintiff. *See, e.g.*, *Perez v. Keysor*, No. 9:10-CV-0518 (LEK)(CFH), 2013 WL 5493932, at *19 (N.D.N.Y. Sept. 30, 2013) (finding that plaintiff demonstrated that factual issues existed with respect to the subjective prong of his medical indifference claim, precluding summary judgment, where plaintiff alleged that he told guards of his medical need and "attempt[ed] to receive medical assistance from patrolling officers; however, they disregarded his requests.")

Accordingly, plaintiff has stated a plausible Section 1983 claim for deliberate indifference to serious medical needs.

2. Deprivation of Food

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). The objective requirement "'does not mandate comfortable prisons,' [but] prisoners may not be denied 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). Thus, the Eighth Amendment requires prisoners receive their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). Prison officials also may not "pose an unreasonable risk of serious damage to [prisoners'] future health." *Id.* at 35. Regarding the subjective requirement, "'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Phelps*, 308 F.3d at 185-86 (quoting *Farmer*, 511 U.S. at 837).

"Courts in the Second Circuit have recognized that 'depriving an inmate of food . . . may constitute a violation of the Eighth Amendment.'" *Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 56 (E.D.N.Y. 2010) (quoting *Quintana v. McCoy*, No. 9:03-CV-0924, 2006 WL 2827673, at *6 (N.D.N.Y. Sept. 29, 2006)); *see also Carter v. City of New York*, No. 11-CV-5704 (JG)(LB), 2012 WL 113495, at *4 (E.D.N.Y. Jan. 13, 2012) ("It is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment to deprive prisoners of adequate food.")

Plaintiff alleges that officers in the medical ward took the inmates' allotted food so that he and other inmates had no lunch or dinner for three days and nights. (*Id.* at

7

Attachs. 7-8.) At this juncture, plaintiff's allegation that officers took his allotted lunches and dinners for themselves for three days is sufficient to state a claim that the officers deliberately deprived him of a sufficient amount of food. *See, e.g.*, *Abascal v. Fleckenstein*, No. 06-CV-349S, 2008 WL 3286353, at *6 (W.D.N.Y. Aug. 7, 2008) (allegations that guard deprived plaintiff of "twelve meals between February 22 and March 6, 2005 (at one point seven meals over a four-day period)," and that another guard deprived plaintiff of food five times within one week were "sufficiently serious to state an Eighth Amendment claim").

Plaintiff has also specifically alleged sufficient facts to satisfy the subjective prong of his claim. Plaintiff alleges that there was a "food cart shortage" in the kitchen of the medical ward, and that as a result, officers took his lunch and dinner trays for three days and nights. (Compl. at Attachs. 7-8.) This allegation certainly suggests that not only were officers aware of the food shortage, but that they personally took away plaintiff's allotted food. Further, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). Thus, at the motion to dismiss stage of the litigation, plaintiff has alleged sufficient facts to satisfy the subjective prong of his claim.[4]

Accordingly, plaintiff has articulated a plausible Section 1983 claim based upon the alleged deprivation of food that survives a motion to dismiss.

B. Failure to Exhaust

County Defendants and Armor argue that plaintiff's deliberate indifference claim is barred by the Prison Litigation Reform Act ("PLRA") because plaintiff failed to exhaust available administrative remedies at the NCCC prior to commencing this action.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

---

[4] The Court liberally construes plaintiff's complaint as also alleging an Equal Protection claim based on his allegation that he was disciplined based upon his race in connection with his complaint about the deprivation of food. This claim was not addressed in the County Defendants' motion to dismiss, but in any event, states a plausible claim. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995); *see also Barclay v. Poland*, No. 03-CV-6585(CJS)(FE), 2006 WL 145552, at *4 (W.D.N.Y. Jan. 19, 2006). However, the Court notes that to the extent that plaintiff attempts to raise a claim of racial discrimination based on verbal abuse by housing officers, such a claim would not be cognizable. *See, e.g.*, *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) ("[A]n inmate 'has no right to redress simply because [an officer] made a hostile or derogatory comment about him.'" (alteration in original) (quoting *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 446 (S.D.N.Y. 2006))); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called [plaintiff] names also did not allege any appreciable injury and was properly dismissed."); *Lunney v. Brureton*, No. 04-CV-2438 (LAK)(GWG), 2005 WL 121720, at *11 (S.D.N.Y. Jan. 21, 2005), *report and recommendation adopted*, No. 04 CIV. 2438 (LAK), 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005) ("[C]omments that are merely 'insulting' or 'disrespectful' do not give rise to a constitutional violation.") (citation omitted); *D'Attore v. New York City*, No. 10-CV-3102 (JSR)(MHD), 2011 WL 3629166, at *7 n.8 (S.D.N.Y. June 2, 2011), *report and recommendation adopted as modified*, No. 10-CV-3102 (JSR)(MHD), 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011) ("We also note that verbal abuse does not constitute a violation of an inmate's constitutional rights."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) ("'Verbal harassment itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations.'" (quoting *DeJesus v. Tierney*, No. 9:04-CV-298, 2006 WL 839541, at *33 (N.D.N.Y. Mar. 28, 2006))).

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings" *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 88-90).

Prior to *Woodford*, the Second Circuit recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result, or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, even after *Woodford*, the Second Circuit has continued to hold that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d 305, 309 (2d Cir. 2011) (citing *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust

9

administrative remedies under the PLRA is an affirmative defense, . . . and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

Plaintiff acknowledges that the NCCC had a grievance procedure in place, and alleges that he filed at least eight sick call forms and more than six letters. (Compl. ¶ II.C.1. and Attach. 2.) Plaintiff alleges that he received no result, answer, or response. (*Id.* at ¶ II.C.2.) Armor and the County Defendants argue that plaintiff fails to state when and with whom the grievances were filed, provide any proof of such complaints, or indicate the outcome of such grievances. These defendants further argue that the complaint fails to provide facts as to whether plaintiff attempted to exhaust the New York State Department of Correction and Community Supervision's ("DOCCS") three-step grievance process before initiating his federal suit. In his letter in opposition, plaintiff argues that "defendants buried [his] paper trail" and that he did in fact exhaust his administrative remedies. (Pl.'s Opp'n.)

Construing the allegations in the complaint and drawing all reasonable inferences in plaintiff's favor, as the Court must on a motion to dismiss, the Court cannot conclude on this record that plaintiff failed to exhaust his administrative remedies. *See, e.g.*, *Moschetto v. Nassau Cty. Sheriff*, No. 10-CV-1971 (JFB)(AKT), 2011 WL 2457927, at *4 n.3 (E.D.N.Y. June 16, 2011). Thus, defendants' motion to dismiss for a failure to allege exhaustion is dismissed without prejudice to renewal at a later stage in the litigation once discovery on this issue is complete.

C. Defendant New York State

New York State moved to dismiss the complaint under Rule 12(b)(1) on the grounds that plaintiff's action against them is barred by the Eleventh Amendment. Because New York State is entitled to Eleventh Amendment immunity, the claims against it must be dismissed.

The Eleventh Amendment states that the "[j]udicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, the Eleventh Amendment bars federal suits against state governments by a state's citizens, unless that state "waive[s] its . . . immunity from suit in a federal court," *Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 618 (2002), or Congress "abrogate[s] such immunity . . . [by] mak[ing] its intention to abrogate unmistakably clear in the language of [a federal] statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment," *Nev. Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).

New York "has not waived its immunity as to suits seeking either monetary or injunctive relief in federal court." *Goonewardena v. New York*, 475 F. Supp. 2d. 310, 322 (S.D.N.Y. 2007) (citing N.Y. Court of Claims Act § 8 (McKinney 2006)). In addition, Congress has not abrogated such immunity. Accordingly, New York State is entitled to Eleventh Amendment immunity, and the claims against it must be dismissed. *See, e.g.*, *Marmot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (affirming dismissal of Section 1983 action against New York state agency and stating that "[i]t is well-established that New York has not consented to § 1983 suits in federal court").

10

## IV. CONCLUSION

For the foregoing reasons, County Defendants' and Armor's motions to dismiss are denied. However, all claims against the Nassau County Correctional Center are dismissed. Defendant New York State's motion to dismiss pursuant to Rule 12(b)(1) is granted, and the claims against it are dismissed.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   March 21, 2016
         Central Islip, NY


\*\*\*

Plaintiff proceeds *pro se*. County Defendants are represented by Thomas Lai, Nassau County Attorney Office, 1 West Street, Mineola, NY 11501. Armor is represented by John J. Doody and Dale Nicholson McLaren, Lewis Brisbois Bisgaard & Smith, LLP, 77 Water Street, Suite 2100, New York, NY 10005. New York State is represented by Lori L. Pack, Office of the New York State Attorney General, 300 Motor Parkway, Suite 205, Hauppauge, NY 11788.